# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# GAINESVILLE DIVISION

**JASON COMPTON, and all others similarly situated,**

    Plaintiff,

v.                                                 Case No. 1:19-cv-33-AW-GRJ

**GENERAL MOTORS LLC,**

    Defendant.

_____/

## **ORDER GRANTING MOTION TO DISMISS**

Jason Compton filed this putative class action against General Motors LLC, alleging violations of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA). The long and short of his claim is that GM sold trucks and SUVs with defective brake systems, knew about the defects, and did not disclose them. This, Compton contends, is an unfair or deceptive trade practice under Florida law. *See* Fla. Stat. § 501.204(1).

The basic facts—which I accept as true at this stage, *see Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1128 (11th Cir. 2019)—come from Compton's First Amended Complaint, ECF No. 23 (FAC). GM sold vehicles with defective braking systems. The vehicles, which included Cadillac Escalades, Chevrolet Silverados, GMC Sierras, and other models, were sometimes hard to stop: "the brake pedal becomes hard, much more force is required from the driver to slow the vehicle, and

1

stopping distance is severely and suddenly compromised." FAC ¶¶ 2-3. Compton bought a used Silverado that had this problem. He bought it from a Florida GM franchised dealership that was under GM's control—at least as to "the documentation and disclosures provided to consumers." FAC ¶ 13. More than a year after Compton bought the truck, he experienced a brake failure and wound up in a ditch. FAC ¶ 15. He paid some $500 to have the brakes fixed, but the problem persists. FAC ¶¶ 17-18.

GM knew all along about the defects. FAC ¶¶ 5-6, 26, 33, 99, 105. It issued technical service bulletins warning franchised dealerships about the issue, but it did not make them public. FAC ¶¶ 20-21, 25. GM further learned of the problem through customer complaints, warranty claims, and other means. FAC ¶¶ 22, 27-30, 108. Yet it did nothing in response. FAC ¶¶ 6, 19, 26, 33.

GM moved to dismiss. ECF No. 32. It takes no issue with the general idea that one can violate FDUTPA by not disclosing known defects. It argues instead that Compton's claim is essentially a fraud claim, so he must (but did not) comply with Rule 9(b). It also argues that Compton did not adequately allege an unfair or deceptive act, that Compton fell short on causation, and that he had not sufficiently alleged GM's pre-sale knowledge.

## I. RULE 9(B) DOES NOT REQUIRE DISMISSAL.

First, GM contends Compton did not comply with Rule 9(b), which provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). As a starting point, Compton's claims are based on a Florida statute and not common-law fraud. And it is undisputed that Compton "need not prove the elements of fraud to sustain an action under the statute." *Davis v. Powertel, Inc.*, 776 So. 2d 971, 974 (Fla. 1st DCA 2000); *see also Hetrick v. Ideal Image Dev. Corp.*, 372 F. App'x 985, 992 (11th Cir. 2010) ("Obviously, the proscription against unfair and deceptive acts and practices sweeps far more broadly than the doctrine of fraud or negligent misrepresentation, which asks only whether a representation was technically accurate in all material respects."); *Office of Attorney Gen., Dep't of Legal Affairs v. Wyndham Int'l, Inc.*, 869 So. 2d 592, 598 (Fla. 1st DCA 2004) ("A deceptive or unfair trade practice constitutes a somewhat unique tortious act because, although it is similar to a claim of fraud, it is different in that, unlike fraud, a party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue.").

There seems to be no consensus on Rule 9's applicability in FDUTPA cases. Some courts suggest Rule 9 never applies. *See, e.g.*, *Guerrero v. Target Corp.*, 889 F. Supp. 2d 1348, 1355 (S.D. Fla. 2012) ("[T]he heightened pleading requirements

of Rule 9(b) cannot serve as a basis to dismiss FDUTPA claims."); *Costa v. Kerzner Int'l Resorts, Inc.*, 2011 WL 2519244, at *2 (S.D. Fla. June 23, 2011) ("This Court therefore concludes that a FDUTPA plaintiff need not meet the Rule 9(b) pleading standard for fraud claims."). Others suggest it might apply, depending on the nature of the FDUTPA claim. *See, e.g.*, *Leon v. Cont'l AG*, 301 F. Supp. 3d 1203, 1226 (S.D. Fla. 2017) ("The Court is not persuaded, however, that all FDUTPA claims—even those clearly sounding in fraud like the claims here—are exempt from Rule 9(b) scrutiny."); *Perret v. Wyndham Vacation Resorts, Inc.*, 846 F. Supp. 2d 1327, 1333 (S.D. Fla. 2012) ("While not all claims under FDUTPA will be based on fraud, Plaintiffs' claim is. Consequently, Plaintiffs' FDUTPA claim must be plead with particularity.").

Here, assuming Rule 9(b) applies to FDUTPA claims that "sound in fraud," as GM contends, I cannot say that Compton's claim "sounds in fraud." The claim is that GM did not supply information that consumers ought to have had. In that regard, it is not so different from *Davis v. Powertel, Inc.*, in which "[t]he essence of the complaint [was] that Powertel was engaged in the practice of selling name brand cellular telephones to its subscribers without informing them that the phones had been programmed to work only with Powertel's wireless communication service." 776 So. 2d at 972. In *Powertel*, the court did not treat the claim as sounding in fraud, at least for class-certification purposes: "If the plaintiffs' claims . . . were like claims

4

for fraud . . . , we would agree that they could not be asserted on behalf of a class . . . . However, we conclude that there is a critical difference between a deceptive trade practice claim and a claim of fraud." *Id.* at 973. Although *Powertel* did not address the heightened pleading standard, it did highlight the difference between a fraud claim and an omission-based claim like Compton's.

Plus, because Compton's claim is an omission-based claim (he clarified at the hearing that his claim does not turn on any statement GM *did* make), the only facts Compton could plead with more particularity are those about when, where, or how GM should have disclosed the defect. But it is not clear that this would be necessary. GM cites *In re Galectin Therapeutics, Inc. Securities Litigation*, 843 F.3d 1257, 1269 (11th Cir. 2016), for the proposition that "a plaintiff must allege precisely what omissions were made in which documents." ECF No. 32 at 7 (cleaned up). That was a securities litigation case, though, involving a statute that "imposes additional heightened pleading requirements." *Galectin Therapeutics*, 843 F.3d at 1269. It was not a FDUTPA case—much less one like *Powertel*—and at any rate dealt with an alleged omission in the context of specific disclosures, not an overall failure to disclose. *Cf. id.* at 1275 (holding that under the statute at issue, "[t]he omission of facts is actionable only to the extent that the absence of those facts would, under the circumstances, render another reported statement misleading."). Here, Compton does not allege that something else GM said made the omission misleading. The

claim is just that—like in *Powertel*—GM violated FDUTPA by selling a product without telling consumers of a relevant product shortcoming. (GM also cites *Justice v. Rheem Manufacturing Co.*, 2014 WL 12845414 (S.D. Fla. 2014), but the issue there was whether fraudulent concealment would support tolling FDUTPA's statute of limitations. The case said nothing about the requirements of pleading FDUTPA claims otherwise.)

To the extent Compton's claim is an omission-based claim like the *Powertel* claim—and not dependent on any specific disclosure or statement—Rule 9(b) is no basis for dismissal. But as explained next, the claims are insufficient regardless. When Compton repleads, Rule 9(b) will not apply, so long as he maintains a FDUTPA claim not sounding in fraud.

## II. COMPTON HAS NOT SUFFICIENTLY ALLEGED AN UNFAIR OR DECEPTIVE ACT.

GM argues that Compton did not allege any deceptive act. For example, "[h]e does not allege that he ever received any communications from GM or ever viewed any GM advertisement before purchasing a two-year-old, used truck at an unidentified, independent GM dealership." ECF No. 32 at 6. The claim is an omission-based claim, though, so to the extent Compton alleges GM had an affirmative obligation to tell him something, it would not necessarily matter whether he had seen advertising materials.

6

But GM has a point as to the broader problem. The complaint does not specify what Compton would have had GM do. Compton did not buy the truck from GM, so GM's point-of-sale disclosures would not necessarily have reached Compton. Compton alleges that GM had some control over the dealership from which he bought the used truck, FAC ¶¶ 13-14, but he leaves open how this fits. Was it an unfair practice to not demand its franchisees disclose defects in used cars? And if that is the unfair practice, wouldn't the class include only those who bought from GM dealers?

The complaint also alleges that GM was wrong to continue selling the vehicles after it knew of the defect. But it is not clear how sales of vehicles to others—particularly after Compton bought his used truck—constituted an unfair or deceptive trade practice as to Compton. If the answer is that GM had an affirmative duty to notify the public—including prospective used-car buyers like Compton—and that continued sales was inconsistent with that duty, Compton must clearly plead it that way.

Similarly, if Compton asserts (as he suggested at the hearing) that GM had an obligation to put disclosures on the vehicles themselves, on the visor or otherwise, and that its failure in that regard was an unfair trade practice, he needs to plead it that way.

These are just examples, and as Compton indicated at the hearing, he may have broad claims as to what GM should have done. But he needs to plead those claims more clearly. He may of course assert multiple and alternative unfair or deceptive acts. But he must allege each with more specificity. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007) (discussing the need for "some specificity in pleading before allowing a potentially massive factual controversy to proceed" (marks and citations omitted)). The complaint is dismissed with leave to amend.

**III. WHETHER COMPTON HAS SUFFICIENTLY ALLEGED CAUSATION.**

GM also argues that Compton has not alleged causation. Because I am dismissing with leave to amend, I will not address this issue now, other than to say this: When Compton repleads and sets out each deceptive and unfair act, he should allege the connection between each act and any harm suffered. This will not necessarily be difficult. For example, to the extent he alleges that GM was obligated to tell prospective used-car buyers like Compton of the defect, it will be enough to say (as he already has) that Compton overpaid for the vehicle. *Cf. Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 986 (11th Cir. 2016) (holding that "FDUTPA damages are measured according to the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties") (marks and citation omitted).

## IV. WHETHER COMPTON HAS SUFFICIENTLY ALLEGED GM'S KNOWLEDGE.

Compton alleges that GM knew (or should have known) about the defect based on consumer complaints and other reports, FAC ¶¶ 32, 37-89, 108, and that certain dealer advisories further demonstrated GM's knowledge, FAC ¶¶ 20-36. GM argues that none of this plausibly alleges that GM had knowledge of the defect's severity.

First, the crux of the complaint is that GM had knowledge of the defect and refused to disclose it. At the hearing, Compton's counsel suggested that knowledge was not an essential element of the claim—that GM violated FDUTPA by selling defective trucks, regardless of whether GM knew of the defects. But even assuming that could be a viable FDUTPA claim, that is not how Compton chose to plead it. His entire complaint revolves around the assertion that GM knew all along. *See, e.g.*, FAC ¶¶ 5-6, 24, 26, 28 33, 39, 99, 105, 108. If Compton wishes to assert a claim not dependent on knowledge, he will need to do so clearly.

Either way, the issue of whether Compton has alleged enough about notice cannot be evaluated until the alleged unfair and deceptive acts are pleaded sufficiently. As discussed at the hearing, what relevant notice GM had will turn on when the act took place. For example, if the unfair act took place in 2014, it won't much matter what knowledge GM had in 2017. When Compton repleads, and to the

extent his claim depends on GM's knowledge, he should assert appropriate allegations regarding knowledge and notice.

One final point: GM has suggested that notice about vehicles other than Chevrolet Silverados should not matter. *See, e.g.*, ECF No. 32 at 4 ("Plaintiff relies on consumer complaints made to the [NHTSA] about brake issues in several different GM makes and models."). This is not a good argument. Compton has alleged that GM installed the identical braking system on all class vehicles—not just Silverados, FAC ¶ 2. It is that braking system at issue.

## CONCLUSION

The motion to dismiss (ECF No. 32) is GRANTED. Compton may file a second amended complaint within fourteen days.

SO ORDERED on March 31, 2020.

s/ *Allen Winsor*
United States District Judge