## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## GAINESVILLE DIVISION

| | |
|---|---|
| **JASON COMPTON, and all others similarly situated,** | |
| **Plaintiff(s),** | **Civil Action Case No. 1:19-cv-33** |
| **v.** | |
| **GENERAL MOTORS, LLC,** | |
| **Defendant.** | |

## GENERAL MOTORS' MOTION TO DISMISS
## SECOND AMENDED CLASS ACTION COMPLAINT
## AND MEMORANDUM IN SUPPORT

1.  General Motors LLC respectfully files this motion to dismiss plaintiff's second amended class action complaint, with incorporated memorandum of law, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

2.  Plaintiff asserts one statutory claim under the Florida Deceptive and Unfair Trade Practices Act, and one common law claim for "negligent undertaking/recall" on behalf of himself and a putative Florida statewide class.

3.  Plaintiff's claims should be dismissed pursuant to Rule 12(b)(1) because he lacks standing as a result of GM's September 2019 recall and October 2019 Special Coverage Adjustment. Plaintiff's claims for equitable relief should be dismissed pursuant to the doctrines of prudential mootness and primary

jurisdiction. Plaintiff's "negligent recall" claim should be dismissed for the additional reasons that it is preempted by federal law, fails to state a claim for which relief can be granted under Rule 12(b)(6), and is barred by the economic loss doctrine. Plaintiff's FDUTPA claim should also be dismissed because it fails to state a claim for which relief can be granted under Rule 12(b)(6).

4.    The grounds and legal authority for this motion are set forth in the following memorandum.

## MEMORANDUM OF LAW

In June 2017, plaintiff purchased a two-year-old, used 2015 Chevrolet Silverado 1500 from an independent, GM-franchised dealership. GM originally sold the truck new in June 2015. Plaintiff alleges that his truck has a defective braking system. He alleges this issue is not specific to his vehicle, but represents a "Class Defect" in the brake systems of several million GM trucks and SUVs.[1]

Plaintiff initially brought a single fraud-based claim under the Florida Deceptive and Unfair Trade Practices Act on behalf of himself and a putative Florida statewide class. Plaintiff then amended his original complaint to address the deficiencies that GM highlighted in its first motion to dismiss (ECF No. 18).

_____

[1] The putative "Class Vehicles" include all 2015 to present Chevrolet Suburbans, Cadillac Escalades, Chevrolet Tahoes, and GMC Yukons/Yukon XLs, as well as all 2014 to present Chevrolet Silverados and GMC Sierras. SAC ¶ 2.

2

GM filed a motion to dismiss plaintiff's First Amended Complaint ("FAC"), (ECF No. 32), which the Court granted in its entirety on March 31, 2020 (ECF No. 81).

On September 11, 2019, after completion of briefing on GM's motion to dismiss plaintiff's FAC, GM and the National Highway Traffic Safety Administration announced GM's voluntary recall of nearly 3.5 million vehicles, including plaintiff's vehicle and the putative Class Vehicles, to address brake vacuum pump issues. Ex. A.[2] Under the recall, which is overseen by NHTSA pursuant to federal law, GM addresses the vacuum/power brake assist condition for any putative Class Vehicle at no charge to customers, regardless of mileage, age of vehicle, or ownership. *Id.*

In October 2019, GM also instituted a Special Coverage Adjustment for all putative Class Vehicles related to the brake pump condition. Ex. B.[3] The Special Coverage Adjustment provides owners and lessees of all putative Class Vehicles

---

[2] Product Safety Recall, N192268490 Increased Brake Pedal Effort (Sept. 2019), *available at* https://static.nhtsa.gov/odi/rcl/2019/RCSB-19V645-6988.pdf. GM respectfully requests that the Court take judicial notice of this Recall Bulletin from NHTSA's official website. *Leroy v. Medtronic, Inc.*, No. 3:14CV284, 2015 WL 4600880, at *5 (N.D. Fla. July 29, 2015) (taking judicial notice of recall "without transforming a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment"); *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1212-13 (10th Cir. 2012) (taking judicial notice of NHTSA's recall documents).

[3] Special Coverage Adjustment, N182202780 Brake Assist Decreased Due to Vacuum Loss (Oct. 2019), *available at* https://static.nhtsa.gov/odi/tsbs/2019/MC-10167479-9999.pdf.

4818-7066-2077 v.1 000197/02316, 5:07 PM, 05/28/2020

with a complete replacement of the vacuum pump and pump belt free of charge if they experience the condition, and reimbursement of all costs associated with brake vacuum pump repairs, for a period of 10 years or 150,000 miles. *Id.*

On April 14, 2020, plaintiff filed his Second Amended Complaint ("SAC") (ECF No. 82) alleging his FDUTPA claim and adding a new cause of action for "negligent undertaking/recall." SAC ¶¶ 136-61. These claims are subject to dismissal for the following reasons.

First, in light of GM's recall and special coverage programs, plaintiff fails to allege an injury in fact or causation sufficient to establish standing under Article III, and his claims for equitable relief are moot.

Second, plaintiff's recall-related claims are preempted because they conflict with a comprehensive federal regulatory framework governing NHTSA-supervised recalls, and his claims for equitable relief should be dismissed pursuant to the doctrine of primary jurisdiction because NHTSA is overseeing the recall and special coverage program.

Third, plaintiff fails to state a claim under FDUTPA or for "negligent recall" pursuant to Rule 12(b)(6).

Finally, plaintiff's "negligent recall" claim is barred by the economic loss doctrine.

4

## STATEMENT OF FACTS

Plaintiff purchased a two-year old, used 2015 Chevrolet Silverado 1500 in "June of 2017" from an independent GM-franchised dealership in Florida. SAC ¶ 27. The vehicle was initially sold new by Gordon Chevrolet in June 2015. *Id.*

Plaintiff alleges that he experienced a brake issue in his truck on a single occasion in January 2019, 18 months after his purchase. *Id.* ¶ 21. While driving downhill, he alleges that his truck's brake pedal "suddenly became hard and the vehicle became difficult to slow down." *Id.* ¶ 21. Plaintiff alleges that mechanics found that his truck's vacuum pump "seized due to internal failure" that caused the pump belt "to snap in half." *Id.* ¶ 22. He alleges having paid $513.60 to replace his "vacuum assist pump assembly and related parts." *Id.* ¶ 23. Since those repairs, plaintiff does not allege any further issues with his vehicle.

Plaintiff alleges that his braking issues stem from a design defect impacting "hundreds [of] thousands" of GM vehicles sold or leased in Florida since 2014, including all Class Vehicles. *Id.* ¶ 2. He defines this alleged "Class Defect" as a "defective design that is prone to sudden and unexpected loss of vacuum in the brake booster," which "makes Class Vehicles difficult to stop." *Id.* ¶ 3.

Plaintiff speculates that GM had "actual knowledge" of this defect in hundreds of thousands of vehicles when his truck was originally sold in June of 2015. *Id.* ¶¶ 27, 28. In support, plaintiff relies on a handful of consumer complaints

5

to NHTSA about unspecified brake issues. *Id.* ¶¶ 67-115, Ex. B, Ex. C. Only two of these complaints are dated *before* the original sale of plaintiff's vehicle in June 2015, *id.* ¶¶ 67-68; the other 47 NHTSA submissions are *after* June 2015. SAC ¶¶ 69-115.

The complaint further speculates that GM was aware of a defect in every putative Class Vehicle at the time of the original sale of plaintiff's vehicle because, between February 2015 and September 2018, GM issued Technical Service Bulletins on four dates to dealerships addressing "rare situations" in which consumers "may comment on a hard brake pedal or that increased effort is needed to depress the brake pedal" in a variety of GM vehicles. *Id.* ¶¶ 32-40. Only one of these TSBs is dated *before* the original sale of plaintiff's vehicle in June 2015, and none of the TSBs describes any instance of vacuum pump seizure resulting in a broken pump belt occurring before plaintiff's vehicle purchase or the original sale date of June 2015. *See id.*

On September 11, 2019, NHTSA and GM announced a voluntary, nationwide recall of nearly 3.5 million vehicles, including plaintiff's vehicle and the putative Class Vehicles, relating to "increased brake pedal effort." Ex. A. The recall notice describes that "in some circumstances," the "vacuum pump output may decrease over time, decreasing the amount of vacuum/power brake assist." *Id.* at 1. Pursuant to the recall, "[d]ealers will reprogram the electronic brake control

6

module with a new calibration that will improve how the system utilizes [a] hydraulic brake boost assist function when vacuum assist is depleted." *Id.* The notice indicates that the recall will be carried out pursuant to the U.S. National Traffic and Motor Vehicle Safety Act ("Safety Act") and directs service personnel to repair the impacted vehicles' braking systems at no cost to the customer, regardless of mileage, age of vehicle, or ownership. *Id.* at 1, 3.

Under federal law, GM's voluntary recall of vehicles is subject to NHTSA oversight. *See* 49 U.S.C. §§ 30120(c)-(e), 30165(a); 49 C.F.R. § 1.50(a). GM is required by statute to notify all relevant registered owners of the recall. *See* 49 U.S.C. §§ 30118(c), 30119(d). GM is obligated to "remedy the defect or noncompliance without charge when the vehicle or equipment is presented for remedy." 49 U.S.C. § 30120(a). If the brake condition is not "adequately" repaired "within a reasonable time," GM is obligated to "replace the vehicle or equipment without charge with an identical or reasonably equivalent vehicle or equipment" or "refund the purchase price, less a reasonable allowance for depreciation." *Id.* § 30120(a), (c).

In October 2019, GM instituted a Special Coverage Adjustment for the brake pump condition, which also applies to all Class Vehicles, including plaintiff's 2015 Silverado. Ex. B. As a part of the special coverage program, "[d]ealers are to replace the vacuum pump and vacuum pump belt" at no charge to

7

customers, for a period of 10 years or 150,000 miles, whichever occurs first, regardless of vehicle ownership. *Id.* GM will not only replace the braking system free of charge, but will also reimburse any owner or lessee for out of pocket expenses associated with repairs of the brake condition. *Id.* at 1, 3 (providing reimbursement of "previously paid repairs to correct the condition described in this bulletin").

## LEGAL STANDARDS

A suit brought by a plaintiff without Article III standing is not a "case or controversy," and an Article III federal court therefore lacks subject matter jurisdiction over the suit. *City of Miami Gardens v. Wells Fargo & Co.*, 931 F.3d 1274, 1282 (11th Cir. 2019). "[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (internal quotation marks omitted) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 US. 334, 352 (2006)). No presumption of truthfulness attaches to plaintiff's standing-related allegations. *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003).

"Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under [Federal Rule of Civil Procedure] 12(b)(1)." *Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) (citations omitted).

8

And "when the jurisdictional issue is factual . . . the Court may consider matters outside the four corners of the complaint." *Ctr. for Biological Diversity v. Jewell*, No. 213CV364, 2014 WL 12618081, at *3 (M.D. Fla. Jan. 9, 2014).

Under the doctrine of prudential mootness, there are circumstances under which a controversy, not constitutionally moot, "is so 'attenuated that considerations of prudence and comity for coordinate branches of government counsel to stay its hand, and to withhold relief it has the power to grant.'" *Id.* at *4.

To survive a motion to dismiss, a complaint must set forth enough non-conclusory allegations to show that liability for the alleged conduct is not merely possible but plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court need not accept "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts." *Wiersum v. U.S. Bank, N.A.*, 785 F.3d 483, 485 (11th Cir. 2015).

## ARGUMENT

## I.    PLAINTIFF LACKS STANDING TO PURSUE HIS CLAIMS.

Plaintiff does not allege injury in fact or causation sufficient to establish standing for his claims due to GM's recall and special coverage program. To have standing under Article III, "a plaintiff must show (1) it has suffered an injury in fact that is [] concrete and particularized and [] actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the

4818-7066-2077 v.1 000197/02316, 5:07 PM, 05/28/2020

defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000) (internal quotation marks omitted). To have an injury in fact, an injury "must actually exist." *Toca v. Tutco, LLC*, No. 19-CV-23949, 2020 WL 1041502, at *3 (S.D. Fla. Mar. 4, 2020) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016)).

### A.    No Injury.

Here, plaintiff's allegations are too speculative to establish an injury in fact because he has not sought the remedies available under the GM recall and special coverage programs. *Sugasawara v. Ford Motor Co.*, No. 18-CV-06159, 2019 WL 3945105, at *6 (N.D. Cal. Aug. 21, 2019) (plaintiff could not establish standing without alleging that he "has availed himself of the recall remedy"); *Hadley v. Chrysler Grp., LLC*, 624 F. App'x 374, 380 (6th Cir. 2015) ("[T]he plaintiffs' assertion that the ORC Module repair may not be effective" evidences "a hypothetical possibility" rather than "an actual or imminent injury."); *see also Cheng v. BMW of N. Am., LLC*, No. CV 12-09262, 2013 WL 3940815, at *4 (C.D. Cal. July 26, 2013) ("[I]t is unclear how Plaintiff can demonstrate injury in light of BMW's offer to completely repair the roll away defect.").

Plaintiff has not alleged objectively verifiable economic losses exceeding those covered by GM's remedy programs, and therefore he does not plead a

4818-7066-2077 v.1 000197/02316, 5:07 PM, 05/28/2020

concrete or particularized injury. *See Sugasawara*, 2019 WL 3945105, at *6 (plaintiff lacks standing where he "failed to adequately allege that the [d]efect remains after the recall remedy has been completed"); *cf. Hamilton v. Gen. Mills, Inc.*, No. 6:16-CV-382, 2016 WL 4060310, at *4 (D. Or. July 27, 2016) (plaintiff failed to plead an injury in fact sufficient to establish statutory standing where a recall/refund offer mitigated the totality of plaintiff's damages).

Plaintiff did not suffer actual injury because GM has already offered precisely the relief that plaintiff admits would redress his and the putative class's alleged injuries: a full replacement if the condition manifests and full refund of any out of pocket costs to address the condition.[4] GM's recall and special coverage programs actually offer plaintiff *more* than he could get under FDUTPA because damages for repair costs or diminished resale value are not recoverable under FDUTPA. *See Kia Motors Am. Corp. v. Butler*, 985 So. 2d 1133, 1140 (Fla. Dist. Ct. App. 2008).

Further, plaintiff does not and cannot allege harm from overpayment because he does not allege that the recall and special coverage remedies do not

---

[4] *See, e.g.*, SAC ¶ 11 ("[T]he only way to remedy the Class Defect is by replacing the vacuum pump with an improved one . . . ."); *id.* ("Plaintiff and Class members must pay out-of-pocket to receive an effective and complete remedy for the Class Defect.").

11

fully restore the value of his vehicle.[5] *Sugasawara*, 2019 WL 3945105, at *6 ("If the post-recall remedy Vehicles perform as they would without the Defect, then it follows that the Vehicles' pre-defect values have likewise been restored.").

Finally, plaintiff lacks injury in fact and therefore standing to assert claims on behalf of purchasers or lessees of vehicles that he himself did not purchase. *Sanchez-Knutson v. Ford Motor Co.*, No. 14-61344-CIV, 2015 WL 11197772, at *4 (S.D. Fla. July 22, 2015) ("[I]n the Eleventh Circuit, a named plaintiff in a consumer class action cannot raise claims relating to products which she herself did not purchase."); *see also Ohio State Troopers Ass'n, Inc. v. Point Blank Enterprises, Inc.*, 347 F. Supp. 3d 1207, 1222 (S.D. Fla. 2018) (dismissing claims on standing grounds and rejecting plaintiffs' arguments that defendant's products "all contain identical SSBS systems with the same defect" because "similarity between products does not confer standing in the Eleventh Circuit"). Even accepting plaintiff's allegation that the exact same brake system exists in all putative Class Vehicles, plaintiff lacks standing to bring suit on behalf of vehicle models other than his Silverado.[6]

---

[5] *Cf. Leon v. Cont'l AG*, 301 F. Supp. 3d 1203, 1219 (S.D. Fla. 2017) (finding an automobile recall program did not deprive plaintiff of standing to the extent he alleged uncompensated economic loss where the scope of the recall program included a free repair, but did *not* include reimbursement for out of pocket costs).

[6] In its March 31, 2020 Order Granting Motion to Dismiss, the Court stated that GM's knowledge of any brake defect in vehicles other than the Chevrolet
(Continued...)

12

### B.    No Causation.

Plaintiff does not plead causation sufficient to establish Article III standing because he has not obtained the remedies under the GM programs. *See Sugasawara*, 2019 WL 3945105, at *6 (where plaintiff has failed to take advantage of a recall remedy, "[a]ny defect that persists in [his] truck is not fairly 'traceable' to Ford but rather to [himself]; causation would therefore be lacking"). Likewise, any allegation of a risk of *future* injury associated with the brake condition (*e.g.*, SAC ¶¶ 145, 159) is speculation. *Varner v. Domestic Corp.*, No. 16-22482-CIV, 2017 WL 3730618, at *4 (S.D. Fla. Feb. 7, 2017) ("[A]llegations of possible future injury, such as possible product failure, are insufficient to establish standing."); *Stewart Agency, Inc. v. Arrigo Enters., Inc.*, 266 So. 3d 207, 214 (Fla. Dist. Ct. App. 2019) (under FDUTPA, "the injury claimed to have been suffered cannot be merely speculative").

---

Silverado is relevant to whether GM had knowledge of a defect in the Silverado because "Compton has alleged that GM installed the identical braking system on all class vehicles—not just Silverados" (ECF No. 81, at 10). GM's standing argument does not relate to GM's knowledge of a defect across vehicle models; it focuses on plaintiff's inability to pursue a claim against GM for vehicle models that he does not allege he purchased, even if those models have the same design or components, because plaintiff has no injury in fact for products he did not purchase.

13

## II.    PLAINTIFF'S CLAIMS FOR EQUITABLE RELIEF ARE MOOT.

The doctrine of prudential mootness requires dismissal of plaintiff's claims for equitable relief in light of GM's recall and special coverage.[7] Prudential mootness "may be applied to bar claims for equitable relief where a controversy is 'so attenuated that considerations of prudence and comity for coordinate branches of government counsel the court to stay its hand, and to withhold relief it has the power to grant.'" *Ctr. for Biological*, 2014 WL 12618081, at *4.

In *Winzler v. Toyota Motor Sales U.S.A., Inc.*, the Tenth Circuit applied the doctrine of prudential mootness to dismiss a vehicle defect class action based on Toyota's announcement of a voluntary recall after the litigation had begun. 681 F.3d 1208, 1210 (10th Cir. 2012) ("[I]f events so overtake a lawsuit that the anticipated benefits of a [equitable relief] no longer justify the trouble of deciding the case on the merits . . . we will hold the case 'prudentially moot.'").

Then-Judge Gorsuch explained why a voluntary recall warranted dismissal of the plaintiffs' lawsuit:

> By filing documents with NHTSA . . . Toyota set into motion the great grinding gears of a statutorily mandated and administratively

---

[7] The equitable relief sought by the plaintiff includes "injunctive relief, recall of Class Vehicles, restitution, damages, and other available relief designed to redress the wrongful conduct" of GM, SAC ¶ 130(d), as well as "a declaratory judgment that Defendant's conduct is unlawful, a court order enjoining Defendant's wrongful acts and practices, and any other relief to which Plaintiff and the Class may be entitled." *Id.* ¶ 12.

14

overseen national recall process . . . Toyota is now obliged by statute to notify all relevant registered owners of the defect . . . [and] to "remedy the defect or noncompliance without charge when the vehicle or equipment is presented for remedy." 49 U.S.C. § 30120(a). And Toyota has subjected itself to the continuing oversight of (and potential penalties imposed by) NHTSA[.]

Given all this, there remains not enough value left for the courts to add in this case to warrant carrying on with the business of deciding its merits. Congress and the Executive have committed to ensure Ms. Winzler precisely the relief she seeks. At best, we might duplicate their efforts . . . . At worst, we might invite inter-branch confusion and turf battles over the details of carrying out an agreed objective . . . .

*Id.* at 1211 (citations omitted); *see also Cheng*, 2013 WL 3940815, at *2 (applying *Winzler* to dismiss vehicle defect class action in light of recall); *Sugasawara*, 2019 WL 3945105, at *6 (citing *Winzler* and holding that "Plaintiffs have not demonstrated 'a cognizable danger that the statutory recall process will fail'"); *Tosh-Surryhne v. Abbott Labs. Inc.*, No. CIV S-10-2603, 2011 WL 4500880, at *4 (E.D. Cal. Sept. 27, 2011) (dismissing claim as moot where product was recalled and plaintiff failed to present evidence "tending to prove that defendant's reimbursement offer under-compensates her").

Here, GM's voluntary recall is subject to NHTSA's supervision. GM has already notified owners and lessees of affected vehicles of the recall pursuant to federal law, and GM continues to offer both the recall and special coverage remedies to customers at no cost. Plaintiff's claims for equitable relief should

15

therefore be dismissed because they seek relief already being provided by the government. *Winzler*, 681 F.3d at 1209.

## III. PLAINTIFF'S RECALL-RELATED CLAIMS ARE PREEMPTED BY FEDERAL LAW.

Plaintiff's "negligent recall" claim and recall-related FDUTPA allegations are preempted because they conflict with federal laws and regulations governing NHTSA-supervised recalls. *Griffith v. Gen. Motors Corp.*, 303 F.3d 1276, 1279 (11th Cir. 2002) (finding state law failure to warn and defective design claims preempted by federal Safety Act regulations). "Conflict preemption exists where state law actually conflicts with federal law, making it impossible to comply with both, or where the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.*

The Safety Act establishes a comprehensive federal regulatory scheme for NHTSA-supervised recalls. *See* 49 U.S.C. § 30119, 49 U.S.C. § 30120, 49 C.F.R. § 577 *et seq*. This regulatory framework dictates clear standards for recall procedures, including appropriate forms of remedy for recalled vehicles, timing for performing repairs, and appropriate notice procedures for manufacturers to follow. *See* 49 U.S.C. § 30120 (setting appropriate forms of remedy and timeliness of repairs); 49 U.S.C. § 30119(d)(1), 49 C.F.R. § 577.10 (setting notice requirements). Any attempt to impose different standards on car manufacturers through state tort law, whether founded in statute or common law, is preempted.

16

*See Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 874 (2000) (holding that "ordinary working of conflict pre-emption principles" applied to the federal Safety Act, and finding state common law claims preempted).

With this comprehensive federal regulatory framework, plaintiff's allegations that GM conducted the recall "negligently" by providing "inadequate disclosures and 'recall' notices" (SAC ¶ 148) and by "implementing a remedy that falls short of timely and adequately repairing the Class Defect" (SAC ¶ 159) directly conflict with the Safety Act, and are preempted. *See Griffith*, 303 F.3d at 1280 (Safety Act preempted "suit seeking to impose liability on a car or truck manufacturer" for actions taken in accordance with associated regulations); *James v. Mazda Motor Corp.*, 222 F.3d 1323, 1326 (11th Cir. 2000) (holding that "courts should apply normal implied preemption principles to determine if a state common law action "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," and finding state law tort claims preempted). Likewise, to the extent plaintiff's FDUTPA allegations challenge the recall,[8] these claims are also preempted.

---

[8] *See, e.g.*, SAC ¶ 148 ("The following acts and practices of Defendant constitute violations of FDUTPA: . . . (d) Refusing to perform an adequate notice campaign of the safety hazard to all new and used purchasers and lessees of Class Vehicles despite its awareness of the Class Defect; and (e) Distributing inadequate disclosures and 'recall' notices to Plaintiff and Class Members despite its awareness of the Class Defect . . . .").

## IV. PLAINTIFF'S EQUITABLE CLAIMS SHOULD BE DISMISSED UNDER THE DOCTRINE OF PRIMARY JURISDICTION.

Plaintiff's claims for equitable relief should be dismissed pursuant to the doctrine of primary jurisdiction, which allows courts adjudicating controversies involving issues that are "within the special competence of an administrative agency" to refer such issues to that agency, while staying or dismissing the claims. *See In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practice Litig.*, 955 F. Supp. 2d 1311, 1347 (S.D. Fla. 2013) (noting that courts have dismissed claims on primary jurisdiction grounds when a federal regulatory agency "continues to be actively involved in" the regulation of the industry in question); *In re Takata Airbag Prods. Liab. Litig.*, No. 14-24009-CV, 2015 WL 12641693, at *3 (S.D. Fla. Sept. 21, 2015) (primary jurisdiction applies where relief sought would "unduly and directly interfere with NHTSA's investigatory and regulatory functions"). Plaintiff's claims for equitable relief should be dismissed because they interfere with NHTSA and the Department of Transportation's regulatory expertise. *See Silvas v. Gen. Motors, LLC*, No. 2:14-CV-89, 2014 WL 1572590, at *3 (S.D. Tex. Apr. 17, 2014) (dismissing claims under primary jurisdiction where the requested relief "conflict[ed] with the existing notices issued in connection with the recall" by NHTSA).

18

## V.   PLAINTIFF'S FDUTPA CLAIM DOES NOT PLAUSIBLY ALLEGE ANY GM PRE-SALE KNOWLEDGE OF A DEFECT.

Plaintiff's FDUTPA claim fails because he does not plausibly allege that GM had knowledge of the alleged defect in plaintiff's truck at the original date of sale. *See Varner v. Domestic Corp.*, No. 16-22482, 2017 WL 3730618, at *15 (S.D. Fla. Feb. 7, 2017) (dismissing FDUTPA claim for failure "to plead with particularity facts sufficient to show [defendant's] knowledge of the risk of fire"); *Fickes v. Volkswagen Grp. of Am., Inc.*, No. 611CV1614, 2012 WL 13103180, at *2 (M.D. Fla. May 2, 2012) (dismissing FDUTPA claim for failing to adequately allege manufacturer's knowledge of a defect). Plaintiff speculates GM was aware of a defect in hundreds of thousands of putative Class Vehicles based on: (i) a couple of NHTSA customer complaints, (ii) four GM service bulletins sent to dealerships, and (iii) various GM documents with vague discussions of pump- and brake-related matters. These allegations do not raise a plausible inference of pre-sale knowledge.[9]

---

[9] Plaintiff makes conclusory allegations that GM knew of a defect based on unidentified complaints made through "the Better Business Bureau, internet forums, GM's franchised dealerships, and directly by owners of Class Vehicles." SAC ¶ 62. These generic allegations—devoid of any specific facts—cannot raise a plausible inference of knowledge. *See Beck v. FCA US LLC*, 273 F. Supp. 3d 735 (E.D. Mich. 2017) (collecting cases), *motion to amend denied*, 2018 WL 3359100 (E.D. Mich. Jul. 10, 2018); *Stewart v. Electrolux Home Prods., Inc.*, No.1:17-cv-01213, 2018 WL 1784273, at *9 (E.D. Cal. Apr. 13, 2018).

4818-7066-2077 v.1 000197/02316, 5:07 PM, 05/28/2020

### A.    NHTSA Complaints and GM Documents Do Not Establish Pre-Sale Knowledge.

#### 1.    NHTSA Complaints

Plaintiff cites only two NHTSA complaints from *before* the original sale of plaintiff's vehicle in June 2015. *See* SAC ¶¶ 67, 68.[10] This is not enough to establish knowledge. Consumer complaints may only support an inference of knowledge when a plaintiff alleges "an unusually high number of complaints" of a specific defect. *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1026 (9th Cir. 2017); *Sloan v. Gen. Motors LLC*, No. 16-cv-07244, 2017 WL 3283998, *7 (N.D. Cal. Aug. 1, 2017) (81 complaints over the course of seven years was not "an unusually high number of complaints" and did not show GM's knowledge of the alleged defect).

These two NHTSA complaints contain only vague and generalized allegations of brake-related issues[11]; they say nothing about the *specific defect*

---

[10] Plaintiff also cites a May 4, 2017 letter on behalf of a dealership in Arkansas that complains about a hard brake pedal condition in a customer's 2015 Chevrolet Suburban. SAC ¶ 42, Ex. G. This letter was sent nearly two years *after* the original sale of plaintiff's vehicle in 2015. Either way, adding that alleged letter to the two NHTSA complaints does not alter this analysis.

[11] SAC ¶ 67 (consumer complaint dated 10/9/2014: "THE ABS ENGAGES AT SLOW SPEEDS INCLUDING DRY CONDITIONS, LEADING TO TOTAL LOSS OF BRAKING AND INCREASED STOPPING DISTANCES" (capitalization in original)); *id.* ¶ 68 (consumer complaint dated 1/15/2015: "IT TOOK A GREATER AMOUNT OF TIME FOR THE VEHICLE TO COME TO A COMPLETE STOP" (capitalization in original)).

4818-7066-2077 v.1 000197/02316, 5:07 PM, 05/28/2020

*alleged here*—alleged loss in "vacuum assist pump output" resulting in "brake booster failure" and the "brake pedal becom[ing] hard." SAC ¶ 4. Because neither of these two complaints describes the specific "Class Defect," they cannot raise an inference of knowledge. *See Sloan*, 2017 WL 3283998, at *7 (because *none* of the 81 NHTSA complaints "explicitly states that the cause of the excessive oil consumption was the Low-Tension Oil Ring Defect . . . these complaints would not establish that GM knew that the Low-Tension Oil Rings caused the excessive consumption").

The 47 NHTSA complaints made *after* the original sale of plaintiff's vehicle in 2015 (SAC ¶¶ 69-115) cannot establish GM's knowledge at the time of sale, and the Court should therefore not consider them.[12] *See, e.g.*, *Grodzitsky v. Am. Honda Motor Co., Inc.*, No. 2:12-cv-114, 2013 WL 690822 at *6-7 (C.D. Cal. Feb. 19, 2013) (no "plausible inference of knowledge based on their allegation that Defendant received customer complaints *after* the sales of the vehicles in question").[13]

---

[12] Plaintiff even includes documents from *after* his own second-hand purchase of the used vehicle in 2017. *Id.* ¶ 43 (Plaintiff's allegations about an April 2018 accident); *id.* ¶¶ 45, 121; Ex. F; Ex. G (November 2018 NHTSA investigation); SAC ¶¶ 10, 11, 49 (September 2019 Canadian Recall Information). These documents cannot raise any inference of pre-sale knowledge.

[13] *See also Granillo v. FCA US LLC*, No. Civ. 16-153, 2016 WL 9405772, at *9 (D.N.J. Aug. 29, 2016) (reviews could not support knowledge "because they were (Continued...)

21

## 2. GM Documents

The five referenced GM documents also do not establish GM's pre-sale knowledge of any defect. *See* SAC ¶ 36. Three of the documents are dated *before* the original sale of plaintiff's vehicle. *See* SAC ¶¶ 28, 29, 31. Those documents make only vague references to vacuum pumps and brake performance, and do not match the hard brake pedal condition alleged by plaintiff. *See* SAC ¶ 4 (report of debris in engines); ¶ 28 (single test pump exhibiting reduced output because of debris); ¶ 29 (complaint stating only that "brakes on the 2014 [Silverado] are not as good as the 2010 or 2012"; no mention of brake pump issues); ¶ 31 (complaint stating "brakes keep randomly going out"; no mention of pump or vacuum-related issues). One document *disclaims* a defect in the brake pump, finding that "pumps were not at fault." SAC ¶ 4, Ex. A. These documents do not plausibly establish GM's knowledge of a defect at the time of sale.

## B. Service Bulletins Do Not Establish Pre-Sale Knowledge.

A single pre-sale technical service bulletin addressing "rare situations" where consumers noted the need for "additional brake pedal effort" in certain GM vehicles is not sufficient to establish GM had pre-sale knowledge of plaintiff's

---

posted after [the purchase] date"); *Cheng v. BMW of N. Am., LLC*, No. Civ. A. 12-09262, 2013 WL 12133886, at *4 (C.D. Cal. Apr. 12, 2013) (disregarding complaints post-dating vehicle purchase); *Stevenson v. Mazda Motor of Am., Inc.*, No. Civ. A. 12-09262, 2015 WL 3487756, at *7 (D.N.J. June 2, 2015); *Beck*, 273 F. Supp. 3d at 753-54.

4818-7066-2077 v.1 000197/02316, 5:07 PM, 05/28/2020

alleged pervasive brake defect. *See* SAC ¶¶ 32-33, Ex. F. The bulletin, dated February 2015, specifically states that the braking issues were aberrations that occurred only in "rare situations" and calls for replacing parts *only* in the event that a customer experienced particular issues. *See* SAC, Ex. F at 1.

The purpose of a TSB is to provide dealerships with service procedures to address potential individual customer issues. The cited TSB does not suggest that *all* putative Class Vehicles have issues or require repairs, or that GM was aware of the alleged defect in plaintiff's vehicle when it was originally sold in 2015, or even when he bought it used in 2017. *See Sloan*, 2017 WL 3283998, at *7 (bulletin "d[id] not suggest that GM knew that all of the engines were inherently defective" where it suggested replacing specified parts in only vehicles manifesting the problem and did not suggest a "different [part] configuration").

The cited TSB also does not describe the same condition that plaintiff alleges from his single brake incident. The bulletins do not address a "vacuum pump seiz[ing] due to internal failure," causing the pump belt "to snap in half." SAC ¶ 22. Where a TSB does not describe the same condition that plaintiff alleges, it cannot support an inference that GM had pre-sale knowledge of that alleged specific defect. *See Blissard v. FCA US LLC*, No. LA CV18-02765, 2018 WL 6177295, at *13 (C.D. Cal. Nov. 9, 2018) ("no statement in the cited [TSBs] that [the manufacturer] was aware of the specific defect alleged in the Complaint"); *see*

23

*also Fisher v. Honda N. Am.*, No. LA CV13-09285, 2014 WL 2808188, at *6 (C.D. Cal. June 12, 2014) (TSB attributed the locking defect to locks locking by themselves or locking twice, while plaintiff alleged defect causing the locks to fail to engage).

Because GM lacked knowledge of a brake defect at the time of sale, this case is distinct from *Davis v. Powertel, Inc.*, 776 So.2d 971 (Fla. Dist. Ct. App. 2000), cited in the March 31 Order.[14] There, defendant Powertel allegedly sold name brand cellular telephones without informing its subscribers that it had reprogrammed the phones to work only with Powertel's communication service. *Id.* at 972-73 (noting that Powertel allegedly deliberately "embedded chip[s]" in the cell phones "that rendered them inoperable" with other services). Unlike Powertel, GM is not alleged to have taken affirmative steps to cause a brake defect, which necessarily would have given GM knowledge of the defect and a disclosure

---

[14] While the March 31 Order, citing *Powertel*, concludes that plaintiff's FDUTPA claim is omission-based and not fraud-based, plaintiff continues to make allegations that go beyond omissions in his second amended complaint. *See, e.g.*, SAC ¶ 134 ("Defendant's *knowing and active concealment*" (emphasis added)); *id.* ¶ 135 ("Defendant's *cover-up*" (emphasis added)); *id.* ¶ 63 ("GM has and continues to *suppress and conceal* this knowledge . . ." (emphasis added)). GM respectfully submits that these allegations sound in fraud, and plaintiff's fraud-based FDUTPA claim should also be dismissed for failure to satisfy the heightened particularity requirements under Rule 9(b). *See D.H.G. Props, LLC v. Ginn Cos.*, 2010 WL 5584464, at *6 (M.D. Fla. Sept. 28, 2010) (dismissing FDUTPA claim based on "generalized allegations" or allegations that are "insufficiently pled 'on information and belief'").

obligation. Because GM did not plausibly know of a defect from other sources, GM cannot be held liable for nondisclosure of information it did not have.

## VI. PLAINTIFF DOES NOT PLEAD AN AGENCY RELATIONSHIP.

To state his FDUTPA claim, plaintiff must allege facts establishing a "deceptive act" on the part of GM. *PNR, Inc. v. Beacon Prop. Mgmt, Inc.*, 842 So. 2d 773, 777 (Fla. 2003).[15] Plaintiff cannot base his FDUTPA claim against GM on dealer communications because he does not allege the necessary facts to plead an agency relationship between the dealership and GM. *Speier-Roche v. Volkswagen Grp. of Am. Inc.*, No. 14-20107-CIV, 2014 WL 1745050, at *8 (S.D. Fla. Apr. 30, 2014) (stating tell-tale signs of agency relationship: power to hire, fire, or supervise dealership employees or ownership); *Ocana v. Ford Motor Co.*, 992 So.2d 319 (Fla. Dist. Ct. App. 2008).

Courts have consistently held that there is no principal-agent relationship between automobile manufacturers like GM and their independent dealers. *See Brisson v. Ford Motor Co.*, 349 F. App'x 433, 434 (11th Cir. 2009) (holding that an authorized Ford franchised dealership was not the agent of Ford); *Williams v.*

---

[15] Plaintiff does not rely on the "unfair" practice prong of FDUTPA, and the complaint makes only conclusory allegations that "GM engaged in unfair . . . acts." SAC ¶¶ 12, 142, 150. *See Fla. Dig. Network, Inc. v. N. Telecom, Inc.*, No. 6:06-cv-889, 2006 WL 2523163, at *5 (M.D. Fla. Aug. 30, 2006) (dismissing FDUTPA claim for "merely stat[ing] legal conclusions . . . that [defendant] has acted in an unconscionable, unfair and deceptive manner").

4818-7066-2077 v.1 000197/02316, 5:07 PM, 05/28/2020

*Yamaha Motor Corp., U.S.A.*, 2015 WL 13626022, at \*6 (C.D. Cal. Jan. 7, 2015) ("[T]he relationship between automobile manufacturers and their dealers has been examined by a host of courts throughout the country, all of which have agreed that dealers are not agents of manufacturers.").

Failure to plead an agency relationship between GM and its dealers was fatal to materially identical claims in a parallel case in Illinois. *See Quitno v. General Motors, LLC*, No. 1:18-cv-07598 (N.D. Ill. Feb. 18, 2020), at 8 (ECF No. 75). In *Quitno*, the court dismissed a nearly identical consumer protection claim, finding a lack of agency relationship between GM and dealership was "because [GM] cannot be held liable for an Alan Brown Chevrolet employee's statement." *Id.*

## VII. PLAINTIFF FAILS TO STATE A "NEGLIGENT RECALL" CLAIM AND THE CLAIM IS BARRED BY THE ECONOMIC LOSS DOCTRINE.

There is no recognized cause of action for "negligent undertaking/recall" under Florida law. *See Wright v. Howmedica Osteonics Corp.*, No. 5:17-CV-459-OC-30PRL, 2017 WL 4555901, at \*4 (M.D. Fla. Oct. 12, 2017), *aff'd*, 741 F. App'x 624 (11th Cir. 2018) ("[T]his Court can find no Florida case recognizing a cause of action for breach of the duty to recall that is separate from a general duty to act with reasonable care."). Instead, such claims are considered as common negligence claims. *Id.* Under negligence analysis, plaintiff's claim fails for two reasons. First, plaintiff does not plead any facts establishing negligence; he offers

only a bare-bones, conclusory recital of the elements of the cause of action. *See* SAC ¶¶ 154-161 (pleading, without any factual allegations, that "GM breached its duty by conducting the Recall negligently and/or wantonly"). This is not enough to survive a motion to dismiss. *Wright*, 2017 WL 4555901, at *4 (dismissing negligent recall claim because plaintiff failed to plead "facts related to general negligence while handling the recall"); *see also Ashcroft*, 556 U.S. at 678; *Wiersum v. U.S. Bank, N.A.*, 785 F.3d 483, 485 (11th Cir. 2015).

Second, the economic loss doctrine bars any negligence claim because plaintiff alleges no personal injury or damage to other property. *In re Takata Airbag Prod. Liab. Litig.*, 193 F. Supp. 3d 1324, 1342 (S.D. Fla. 2016) (barring any negligence-based claim for purely economic loss caused by an allegedly defective product because "in Florida, the economic loss rule means a manufacturer has no duty under . . . a negligence . . . theory to prevent a product from injuring itself"); *Fickes*, 2012 WL 13103180, at *6 (economic loss bar applies where "defendant is a manufacturer or distributor of a defective product which damages itself but does not cause personal injury or damage to other property").

## CONCLUSION

For these reasons, GM respectfully requests dismissal of the Second Amended Class Action Complaint in its entirety without leave to amend.

27

DATED: May 28, 2020

Respectfully submitted,

*/s/ Ginger Barry Boyd*
Ginger Barry Boyd, Esq.
Florida Bar Number 294550
NELSON MULLINS BROAD AND CASSEL
215 South Monroe Street, Suite 400
Tallahassee, FL 32301
Telephone: (850) 205-3356
Facsimile: (850) 521-1472
ginger.boyd@nelsonmullins.com

Kathleen Taylor Sooy
(admitted *pro hac vice*)
Andrew Pruitt
(admitted *pro hac vice*)
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, DC 20004
Telephone: 202-624-2500
Facsimile: 202-628-5611
ksooy@crowell.com
apruitt@crowell.com

*Attorneys for General Motors LLC*

28

## <u>RULE 7.1(F) CERTIFICATION</u>

Pursuant to Local Rule 7.1(F), the undersigned certifies that the total number of words in this memorandum, inclusive of headings, footnotes, and quotations is 6,780 words.

*/s/ Ginger Barry Boyd*

Ginger Barry Boyd, Esq.
*Counsel for General Motors LLC*

4818-7066-2077 v.1 000197/02316, 5:07 PM, 05/28/2020

## RULE 7.1(K) REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(k), GM respectfully requests a hearing on this motion. Oral argument will benefit the Court because this motion raises important questions about plaintiff's pleading obligations with respect to FDUTPA and "negligent undertaking/recall" claims in federal court. GM estimates that one hour should be sufficient time for oral argument.

4818-7066-2077 v.1 000197/02316, 5:07 PM, 05/28/2020

## CERTIFICATE OF SERVICE

The undersigned certifies that on the 28th day of May, 2020 the foregoing document is being served via transmission of a Notice of Electronic Filing generated by CM/ECF on all counsel of record including:

Frank Jerome Tapley
Cory Watson, P.C.
2131 Magnolia Avenue South, Suite 200
Birmingham, AL 35205

*/s/ Ginger Barry Boyd*
Attorney

4818-7066-2077 v.1 000197/02316, 5:07 PM, 05/28/2020